UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DONNA HOGANSON,

    Plaintiff,

v.                                                   Case No. 2:04-cv-299
                                                       CONSENT CASE
MENARD, INC., et al.,

    Defendants.
_____/

**OPINION**

Plaintiff Donna Hoganson filed this personal injury action after sustaining a broken femur while shopping at Menard, Inc., in Marquette, Michigan. Plaintiff contracted polio at the age of six months and walks with arm crutches. Her right leg is shorter and weaker than her left leg. She had her left hip replaced in 1997. On December 10, 2003, Plaintiff exited the Menard store following a Menard employee, who helped load her sister-in-law's vehicle. It was windy outside the store and the Menard employee suggested that Plaintiff go back inside the store. Plaintiff asked if it was safe to re-enter the store through the sliding exit doors. The Menard employee stated "yes." However, as Plaintiff attempted to re-enter the store, she was struck by the closing sliding doors. The impact knocked her to the ground. As a result, she broke her femur just below her hip prosthesis. On December 16, 2003, the Acusensor in the door was replaced. The Acusensor is designed to detect people or objects in the doorway. The Acusensor sends a signal that keeps the doors open. When no signal is sent, the doors close. Defendants Wisconsin Automatic Door, Inc., and Door Closing, Inc., have been dismissed from this case. Plaintiff and Defendant NABCO

Entrances, Inc., have recently entered into a settlement agreement which will result in dismissal of NABCO Entrances, Inc.

The door system utilizes sensors on each side of the sliding doors which detect motion or the presence of a person or object. The sensors emit a signal to the computer which opens the doors. The doors are not supposed to close as long as the sensors detect motion or presence. Once motion or presence is no longer detected, the doors will close after the safety timer has timed out. The sensors need periodic replacement and should be replaced as part of routine maintenance on the doors. If a sensor shorts out, the doors should not open or close.

Defendant Menard moves to exclude Plaintiff's expert witness Roger Davis on the ground that he is not qualified to give expert testimony in this case. In the event Davis is excluded from testifying as an expert witness, Defendant Menard requests summary judgment maintaining there exists no other testimony to support Plaintiff's claim that the door was defective. Roger Davis is a mechanical engineer. Both Menard's and Plaintiff's expert witnesses made measurements concerning the door closing speed. They tested the door using different methods. Davis apparently used his watch. Both experts, not surprisingly, came to different conclusions. Davis apparently determined that the closing speed at the time he checked the door was too fast. Davis has concluded that at the time of this accident – although the doors have been repaired and worked on since and the sensors have been removed and replaced – the doors must have closed too quickly.

Whether an expert should be precluded from testifying at trial is determined under Fed. R. Evid. 702 and pursuant to *Daubert v. Merrell-Dow Pharmaceuticals*, 509 U.S. 579 (1993). The *Daubert* factors apply when an expert relies on "some principle or methodology" and is not applicable when testimony is based solely on experience and training. *Compton v. Subaru of*

*America*, 82 F.3d 1513, 1518 (10th Cir. 1996).  In *Bogosian v. Mercedes-Benz of North America, Inc.,* 104 F.3d 472 (1st Cir. 1997), the court found that *Daubert* was not applicable to expert testimony regarding a defective automobile gear selector lever.  The expert in that case examined the vehicle away from the accident and did not attempt to replicate the known facts surrounding the accident, but tested his theory.  Nevertheless, the court concluded that the expert testimony was not relevant or reliable under Rule 702.  The Sixth Circuit has held that "*Daubert* provides a 'flexible' framework to aid district courts in determining whether expert scientific testimony is reliable." *United States v. Jones*, 107 F.3d 1147, 1158 (6th Cir. 1997).  In *Jones*, the Sixth Circuit did not apply *Daubert* to determine the admissibility of a handwriting expert's testimony.  In *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994), the Sixth Circuit applied the entire *Daubert* framework to expert testimony not based on scientific knowledge.  In that case, the court applied the *Daubert* framework to an expert's testimony on police procedures.

In deciding whether an expert's testimony is admissible, the court must determine whether the testimony is factually relevant and whether it has foundational reliability.  *Berry*, 25 F.3d 1342.  The court is required to perform the gatekeeping function as stated in *Daubert* when determining the admissibility of all expert testimony, even testimony characterized as nonscientific.  The court must initially undertake a two step inquiry which examines the expert's opinion testimony for reliability and relevance.  *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997).

As the gatekeeper of expert testimony, the court must ensure that all expert testimony is reliable and relevant.  Fed. R. Evid. 702; *Daubert*.  First, the court must determine whether the proposed expert is qualified by knowledge, skill, experience, education, or training.  Second, the

court must analyze whether the expert's underlying reasoning or methodology is scientifically valid. Several factors stated in *Daubert*, while not exhaustive or dispositive, are involved in this consideration: (1) whether a theory or technique can be and has been tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error in using a particular scientific technique and the existence and maintenance of standards controlling the technique's operation, and (4) whether the theory or technique has been generally accepted in the particular scientific field. After a court concludes that a proposed expert is qualified and his methodology is derived by the scientific method, the court must then determine whether the proposed expert's testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.

If the proposed expert is considered qualified, defendant must show that the expert's testimony is based on "scientifically valid principles." One method to show this is by proof that the testing has been subjected to normal scientific scrutiny through peer review and publication. *Daubert* (on remand), 43 F.3d at 1318. Where such evidence is unavailable, Plaintiff may establish this through the testimony of their expert. *Id.* at 1319. By this method, Plaintiff's expert must precisely set forth how he conducted his testing, and, most importantly, point to some objective scientific source which supports his methodology as recognized science, and not simply preparation for litigation. *Id.* Further, Plaintiff is required to establish that the testing methodology fits the stated factors in *Daubert*. However, the *Daubert* factors are not an exhaustive list of what may be relevant to the court's ruling.

The court is then required to ascertain the "fit" or the relevancy of the testimony. To satisfy this standard, Plaintiff is required to establish that the testimony will assist the jury in

evaluating the evidence. Plaintiff must show that the testimony provides relevant evidence. *See Fusco v. General Motors Corp.*, 11 F.3d 259, 264 (1st Cir. 1993), requiring a foundational showing of a "substantial similarity" in circumstances of accident and demonstrative evidence of staged event.

Further, the court must consider whether the expert's testimony should be excluded under Fed. R. Evid. 403. The court noted in *Daubert*, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice exercises more control over experts than over lay witnesses." *Id.* at 595.

Roger Davis is a mechanical engineer. Defendant Menard argues that Davis is not qualified to testify because he never testified in a case involving an automatic sliding door, he is not a human factors expert, he never designed an automatic sliding door, he never attended any courses, seminars or lectures related to the operation or design of automatic sliding doors, he has never made a presentation about automatic sliding doors, he has no formal training as an American Association of Automatic Door Manufacturer's Inspector, and he has no experience in examining microprocessors used on automatic sliding doors. Further, Defendant Menard attacks the methodology that Davis used in measuring the door closing speed at the time he tested the door on August 6, 2007. The Accusensor that allegedly failed and caused the accident was not examined because it had been replaced and disposed of by Wisconsin Automatic Door at the time repairs were made after the accident.

Davis did measure the closing speed of the doors with his wrist watch and a tape measure and determined that the doors closed too fast and therefore must have closed too fast at the time of the accident. The closing speed of the doors several years after the incident has no relevance to this case. Speculation about the closing speed at the time of the accident cannot be based on

measurements made of the closing speed years after the accident. If Plaintiff's version of the facts are correct, the door closed on her and either caused the injury, or caused her to fall which caused the injury. The door, by all accounts, should not have closed when the sensor detects presence or motion. At best, it is simply speculation that the incident would not have happened if the door closed on Plaintiff at a slower rate of speed. The door should not have closed. Testimony regarding measurements taken of the closing force of the door years after the incident will not be admitted at trial.

The door speed is actually controlled and tested by a Handy Terminal which plugs into the microprocessor unit. Defendant Menard did not have a Handy Terminal and Menard employees did not control the closing speed of the doors. All adjustments were made by the service company. As a mechanical engineer, Roger Davis is qualified to testify about the function and operation of the door and the issues regarding maintenance of the door.

Defendant Menard moves for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered

by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Menard asserts that it could not have breached a duty of care. However, it is clear that Menard owed a duty to its customers of safe ingress and egress of the store. Plaintiff alleges that she was struck by a door which caused her to fall and sustain an injury. It is undisputed that the door system should not close on Menard customers when the door sensors detect presence or motion. A question of fact exists whether Defendant Menard properly maintained its door system and whether Menard breached a duty of care owed to Plaintiff.

Accordingly, Defendant Menard's Motion to Exclude Plaintiff's Expert Opinions will be granted in part and denied in part and the Motion for Summary Judgment will be denied.

　　　　　　　　　　　　　　　　　　　　 /s/ Timothy P. Greeley
　　　　　　　　　　　　　　　　　　　　TIMOTHY P. GREELEY
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Dated:   July 14, 2008